**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 05-3546

SHIRLEY A. EDWARDS, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 25, 2007                    Decided   January 30, 2008)

*Robert A. McCarter*, with whom *David M. Maria* was on the brief, both of Washington, D.C., for the appellant.

*Rebecca A. Baird*, with whom *Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, were on the brief, all of Washington D.C., for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judges*.

KASOLD, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed an opinion concurring in part and dissenting in part.

KASOLD, *Judge*: Shirley A. Edwards, widow of veteran Luther Edwards, Jr., appeals through counsel an August 26, 2005, Board of Veterans' Appeals (Board) decision that determined she had not filed timely requests for waivers of indebtedness pursuant to the requirements set forth in 38 C.F.R. § 1.963 (2005) for two debts arising from overpayment of her improved pension benefit.  For the reasons set forth below this matter will be remanded for further adjudication consistent with this opinion.

**I. BACKGROUND**

In November 1999, the Secretary informed Mrs. Edwards that her pension would be adjusted in the amount of $2,366 because she had been overpaid due to her failure to report all of her income.

She was advised that she had the right to request a waiver of the debt and that such request must (1) be submitted within 180 days, (2) be in writing, and (3) explain "any responsibility [she] had in causing the debt or why [she was] not responsible for it," "any financial hardship which would be caused by collection of the amount owed," or "any other circumstances which [she] believe[d] would show that collection of the debt would be inequitable to [her]." *See* Appellant's Brief (Br.), Exhibit (Ex.) A; Secretary's (Sec'ys) Br., Ex. A.

In May 2000, Mrs. Edwards submitted, pro se, three statements with respect to the overpayment. Her May 4 statement requested reinstatement of her pension benefits and noted that her only income consisted of a monthly $621 Social Security payment. Her May 18 statement requested a recalculation of her pension and adjustment of her overpayment because "none of my prescription medications since 1997" were used to calculate the pension. R. at 29. And, her May 22 statement requested postponement of further action concerning the overpayment until the documentation she submitted could be processed.

Subsequently, Mrs. Edwards was notified by a July 3, 2000, letter of an additional overpayment in the amount of $12,347. On August 22, 2001, Mrs. Edwards submitted a statement in support of her claim "requesting a waiver of the indebtedness I have been informed of." R. at 44. She further noted that she was a cancer patient and (1) asked "for a complete waiver due to the monies I received was not [$]14,000 as stated," (2) requested a copy of her husband's claims file to "verify information," and (3) asked for reinstatement of her pension benefit due to hardship. *See id*. Mrs. Edwards filed a similar statement on September 14, 2001. *See* R. at 46.

In October 2001, the VA Committee on Waivers and Compromises notified Mrs. Edwards that it denied waiver of both the $2,366 and the $12,347 indebtedness. In making these decisions, the Committee considered only Mrs. Edwards' August 2001 waiver request, and found that it had not been filed within 180 days of the November 20, 1999, notification of the $2,366 debt, or the July 3, 2000, notification of the $12,347 debt.

In the decision on appeal, the Board considered the May 2000 submissions, but determined that they were not requests for waiver of the $2,366 indebtedness because Mrs. Edwards did not "use the word waiver nor . . . use any word or group of words that could be construed as a synonym with waiver." R. at 4. Further, the Board considered her August 2001 waiver request to be related to the

2

$12,347 debt, and found that it was not received within the required 180-day period from the July 3, 2000, notification date.

## II. DISCUSSION

Although the Secretary generally is required to recover erroneous VA payments or overpayment of benefits, *see* 38 U.S.C. § 5314, he may waive such recovery if he deems that collection would be "against equity and good conscience" and an application for relief is made within 180 days following the date of a notice of indebtedness. *See* 38 U.S.C. § 5302(a), (c); 38 C.F.R. §§ 1.962-.963 (2005). In this instance, the Board denied waiver without reaching the merits of Mrs. Edwards' submissions; rather, the Board denied waiver because it determined that Mrs. Edwards had not submitted a timely waiver request. Mrs. Edwards contends that the Board erred in determining that she had not timely filed requests for waiver of either the $2,366 or the $12,347 debt.

### A. The $2,366 Indebtedness

There is no dispute over the fact that Mrs. Edwards' May 4 and May 18, 2000, submissions were received within 180 days of when she was notified of the $2,366 debt. The question is whether any of these statements constituted a request for waiver. As noted above, the Board determined that the May 2000 submissions were not requests for waiver of the $2,366 indebtedness because Mrs. Edwards did not "use the word waiver nor . . . use any word or group of words that could be construed as a synonym with waiver." R. at 4. In rendering its decision, the Board provided no analysis regarding the timing of the submissions (just prior to expiration of the 180-day appeal period),[1] or Mrs. Edwards' belief that the overpayment was miscalculated, or her apparent expression of hardship caused by living on a fixed income – all possible indicia of a request for waiver. In sum, because the Board failed to consider these factors in reaching its determination that her May 2000 communications did not constitute a waiver request, it is clear that the Board did not sympathetically read these statements, presenting the Court with the issue of whether such a reading is required.

---

[1] The timing of such submissions is a factor for consideration in ascertaining whether a person is applying for a waiver because the notice of rights accompanying notification of the debt establishes two deadlines for recipients. First, if a beneficiary disputes the amount of the debt or requests a waiver of the debt within 30 days from the date of notification, benefits will not be withheld until the dispute is resolved. Second, a recipient has 180 days from the date of notification to request a waiver of the debt. *See* Appellant's Br., Ex. A; Sec'ys Br., Ex. A.

3

The Secretary essentially argues that Mrs. Edwards' submissions were not entitled to a sympathetic reading because a request for waiver of debt is not a claim for benefits, and there is no duty to assist associated with a waiver request. His argument, however, is not supported by the law. Although the Secretary relies on *Lueras v. Principi*, 18 Vet.App. 435, 439 (2006), for the proposition that a claim for benefits is distinct from a request for waiver of indebtedness, that case held only that the duty to notify under 38 U.S.C. § 5103(a) does not apply to an application for waiver because an application for waiver is not a claim for benefits as contemplated by the Veterans Claims Assistance Act, and because specific notification procedures were provided for such application in 38 U.S.C. § 5302(a) (regarding waiver requests). Succinctly stated, *Lueras* did not address the duty of the Secretary to sympathetically read pro se pleadings and it did not hold that the duty to assist did not apply to waiver requests.

Moreover, assuming arguendo that the duty to assist does not apply to a waiver request – an issue we need not decide today – it does not follow that there is no duty to sympathetically read Mrs. Edwards' May 2000 pro se submissions. This is because the Secretary's duty to sympathetically read submissions is tied to the pro se status of the appellant when filing pleadings before the Secretary in actions related to benefits, and not whether the pleadings specifically seek benefits. Indeed, even a pro se request for revision based on clear and unmistakable error (CUE) must be read sympathetically. *See Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005) (stating that the duty to sympathetically read pro se filing applies to CUE motions); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (holding that the Secretary must sympathetically read prior pro se filings in determining if CUE exists in an earlier decision); *see also Livesay v. Principi*, 15 Vet.App. 165, 178-79 (2001) (en banc) (noting that a CUE motion is not a claim for benefits). An allegation of CUE is an attack on a previous Agency decision that has become final. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 332 (2006) (en banc) (noting a request for revision on the basis of CUE "is a collateral attack on an otherwise final benefits decision on the basis of a specific allegation of CUE"). It is not a claim for benefits, although it is related to benefits, and the duty to assist does not apply. *See Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) (en banc).

There can be no dispute that a request for waiver of indebtedness is related to VA benefits. The indebtedness in this case arose from an overpayment of benefits, and Mrs. Edwards had a right to seek waiver of any amount owed. Because the duty to sympathetically read pro se pleadings

4

applies, at a minimum, to pleadings related to the provision of VA benefits, and Mrs. Edwards' May 2000 submissions were related to the provision of VA benefits, we need not decide if the duty to assist applies to a request for waiver or if the duty to sympathetically read pleadings applies to any and all pro se submissions to the Secretary, as opposed to those submissions that are related to VA benefits. Inasmuch as it is clear that the Board did not sympathetically read Mrs. Edwards' May 2003 submissions related to her $2,366 indebtedness, this matter will be remanded for the Board to do so in the first instance. *See Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005) (holding that whether a sympathetic reading of a veteran's filings raises a claim is a factual inquiry); *Richardson v. Nicholson*, 20 Vet.App. 64, 72 (2006) (remanding for the Board or regional office to give a sympathetic reading to pro se application for benefits); *see also Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (holding that the interpretation of a veteran's filings is a factual inquiry).

## B. The $12,347 Indebtedness

At oral argument, the Court sua sponte raised the question of whether Mrs. Edwards' May 2000 submissions could be construed as waiver requests for the $12,347 debt. *See Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Forshey v. Principi*, 284 F.3d 1335, 1356 (Fed. Cir. 2002) (adopting the above-quoted language from *Kamen*), *overruled on other grounds by Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003). Mrs. Edwards then argued that because the total of the claimed debt ($2,366 and $12,347) all stems from overpayments of a single benefit – her VA pension – her May 2000 submissions, if found to be requests for waiver on remand, should serve as a waiver request for the entire debt.

The July 2000 notice of the $12,347 debt arising from overpayment of Mrs. Edwards' pension is not in the record and apparently is lost, and much of the argument below understandably focused on this issue, and not upon the relationship, if any, between the two debts. Additionally, the July 2000 notice of this debt was sent before the Secretary had taken any action with regard to Mrs. Edwards' May 2000 submissions. Nevertheless, the Secretary treated the $2,366 and $12,347 overpayments as separate matters throughout the proceedings. In this case, whether Mrs. Edwards' May 2000 submissions could be considered a waiver request of both debts becomes relevant if, and only if, the May 2000 submissions, individually or collectively, are deemed to be a request for

5

waiver. Thus, this issue is interrelated with the matter being remanded. Under these circumstances, the matter will be remanded for consideration by the Board in the first instance. *See Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (holding that the Court has discretion to hear or to remand legal arguments raised for the first time on appeal).

### III. REMAND

On remand, Mrs. Edwards may present any additional evidence and argument in support of her contention that she requested a waiver of the indebtedness and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

### IV. CONCLUSION

The August 26, 2005, decision of the Board is SET ASIDE and REMANDED for adjudication consistent with this opinion.

LANCE, *Judge*, concurring in part and dissenting in part: I concur with the result reached by the majority pertaining to the first debt in the amount of $2,366, but because I believe the Court should affirm the Board's decision with regard to the second, $12,347 debt, I must respectfully dissent. In an analysis reminiscent of *Coburn v. Nicholson*, 19 Vet.App. 427 (2006), the majority manufactures confusion where none exists and assumes the role of the appellant's co-counsel by fashioning a new argument for the appellant to justify a remand. Although the majority finds the $12,347 debt to be interrelated with the $2,366 debt such that a remand is required, I find the record clearly establishes that these debts are separate and distinct. A review of the audit provided to the appellant by VA in February 2002 shows how both debts were calculated. R. at 67-68. In July 1999, VA informed the appellant that it had received information of unreported income that she had received and proposed to reduce her award of benefits. R. at 25. The VA audit of benefits shows that, from February 1, 1996, through January 30, 1997, the appellant received $3,736 from VA in benefits. R. at 68. Yet, based upon unreported additional income earned during that time, the appellant was entitled to receive only $1,370. *Id.* Accordingly, VA calculated an overpayment of $2,366 ($3,736 - $1,370) for benefits received between February 1996 and January 1997. VA duly

notified the appellant of this overpayment in November 1999. R. at 25. Then, after an income verification was completed against the appellant's Social Security number in June 2000 (R. at 55, 67), additional unreported income was discovered, and for the period between February 1, 1997, and June 30, 2000, VA calculated that the appellant was entitled to no benefits. However, VA had paid the appellant a total of $12,347 between February 1997 and June 2000, creating a second overpayment of $12,347. R. at 68. After this second overpayment was calculated, a letter was sent to the appellant on June 29, 2000. R. at 41. The letter stated that, given this additional income, the appellant had not been eligible to receive any benefits since February 1, 1997, and an overpayment had been created. *Id.*

Accordingly, it is quite apparent that there are two debts arising from two separate and distinct time periods. The first debt was calculated on unreported income earned from February 1, 1996, through January 30, 1997. R. at 68. The second debt was calculated on additional unreported income earned from February 1, 1997, through June 30, 2000. *Id.* In relation to the appellant's May 2000 submissions to VA, she did not even have notice of the $12,347 debt until after June 29, 2000, well after her May 2000 letters were submitted to VA. In fact, VA reported that it did not even discover the $12,347 debt until June 2000. R. at 55. When the appellant submitted the May 2000 letters to VA, she had no notification of the amount of the second debt, the time period during which it was created, nor the additional reported income on which this second debt was calculated. Hence, even if the May 2000 submissions are construed as waiver requests as to the $2,366 debt, such letters cannot also serve as waiver requests for the $12,347 debt, a separate debt not yet calculated by VA in May 2000. Therefore, the $12,347 debt is not intertwined with the $2,366 debt such that a remand is appropriate. *See Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (in the interest of judicial economy and avoidance of piecemeal litigation, two claims sufficiently intertwined should be considered together).

Moreover, the appellant does not assert that she did not receive notice of the $12,347 debt. The statute and the regulation governing the waiver of indebtedness clearly require that a request for a waiver be received within 180 days from the date on which notice was sent to the payee. 38 U.S.C. § 5302(a); 38 C.F.R. § 1.963(b)(2). There is a presumption of regularity such that "'it is presumed that government officials have properly discharged their official duties.'" *McCullough v. Principi*, 15 Vet.App. 272, 275 (2001) (quoting *Ashley v. Derwinski*, 2 Vet.App. 307, 308 (1992)). This

7

presumption can only be rebutted by the submission of "'clear evidence to the contrary.'" *Id.* (quoting *Ashley*, 2 Vet.App. at 309). The Board determined that the July 2000 notification of the $12,347 debt was mailed to the appellant, and the regularity of that mailing was presumed. R. at 4. The Board also noted that the appellant did not assert that the notification did not occur. *Id.* Although a copy of the July 2000 letter has apparently been lost, the Secretary provided a computer-generated document showing that the July 2000 notice was sent to the appellant at her correct address. R. at 70-73. Also, before the Court in 2004, the appellant stated in her brief that she "does not dispute that [the July 2000] notification was sent to her." At oral argument the appellant conceded that she did receive the July 2000 notice, but could not recall exactly when she received it. This does not constitute clear evidence that VA failed to mail the July 2000 notice and the presumption has not been rebutted. *See McCullough*, 15 Vet.App. at 275.

Based upon her assertion that her May 2000 letters to VA were requests for a waiver of the $2,366 indebtedness, the appellant clearly understood the process of filing a waiver request, but failed to do so regarding the $ 12,347 debt until 415 days later, on August 22, 2001, long after the 180 days to file such a request had expired. In this case, the appellant created an overpayment of benefits by inaccurately reporting her income, filed a request for a waiver of this overpayment 235 days beyond the time statutorily allotted for such a request, and failed to convince me that the law entitles her to have her waiver request reconsidered by the Board at this late date.

For these reasons, I would affirm the Board's denial of the appellant's request for waiver of the $12,347 overpayment as the request was not received within 180 days after VA notified her of the indebtedness. Noncompliance by the appellant with 38 U.S.C. § 5302(a) should not result in a penalty to the public fisc and to taxpayers.