**This version includes the errata of 16Nov04 - e**

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-834

ESPIRIDION L. LUERAS, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    October 21, 2004    )

*Robert E. Tangora*, of Santa Fe, New Mexico, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *David J. Lowenstein*, all of Washington, D.C., were on the pleadings for the appellee.

Before IVERS, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

IVERS, *Chief Judge*: The appellant, Espiridion L. Lueras, appeals a January 17, 2001, decision of the Board of Veterans' Appeals (BVA or Board) that denied a waiver of recovery of an overpayment of veteran's improved pension benefits in the amount of $9,257, precluded by a finding of bad faith on the part of the veteran. Record (R.) at 14. On May 29, 2003, the Court, by single-judge order, vacated the January 17, 2001, Board decision, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, and *Weaver v. Principi*, 14 Vet.App. 301 (2001) (per curiam order), and remanded the matter for further adjudication. On June 18, 2003, the Secretary filed a motion for reconsideration that the Court granted on July 3, 2003, ordering the parties to submit supplemental memoranda of law.

# I. BACKGROUND

The appellant served in the U.S. Army from March 1943 to December 1945. In March 1986, the appellant filed an application for compensation or pension in which he indicated that his spouse did not earn any income. R. at 17-20. In May 1986, the appellant was notified that his application for a disability pension had been granted, effective April 1, 1986. R. at 24.

The appellant submitted eligibility verification reports (EVRs) in June 1987, August 1988, May 1989, and 1990, in which he reported that his family income was derived solely from the Social Security benefits that he received, and that his wife received no other income. R. at 38-39, 45-46, 50-51, 57-58. In June 1991 and June 1992, the appellant filed EVRs in which he again indicated that Social Security was his family's sole source of income and that his spouse received no income. R. at 77-78, 88-89. In November 1991 and July 1992, VA informed the appellant that, upon any change in his income, the appellant must immediately inform VA to avoid the creation of an overpayment. R. at 82, 92-93. After the appellant submitted a May 1993 EVR (R. at 103-05), in which he asserted that Social Security benefits were his family's only source of income, he was again notified of the necessity of promptly informing VA of any change in his income. R. at 101. In June 1994, the appellant submitted an EVR claiming that his family's income was entirely from Social Security benefits and that his wife earned no other income. R. at 116-17.

In September 1996, VA notified the appellant that it had received information indicating that his wife received income, which was not reported to VA, resulting in an overpayment to the appellant. R. at 135. VA allowed the appellant an opportunity to provide evidence on his behalf to challenge the overpayment. R. at 135-37. In March 1997, VA informed the appellant that it had received no evidence from him and informed him that it would calculate the amount of overpayment of benefits that he had received based upon the unreported income information before it. R. at 129. Based upon the evidence before it, VA adjusted the appellant's monthly entitlement and notified him that he had received an overpayment of benefits. *Id.* He was also notified that he would be informed of the exact amount of overpayment owed and given information regarding repayment. *Id.* In August 1997, the appellant requested a complete waiver of the overpayment because he was financially unable to repay the debt. R. at 160. In September 1997, VA notified the appellant that the Committee on Waivers and Compromises (Committee) had denied his request for a waiver of

the debt. R. at 180-85. The Committee determined:

> Mr. Lueras is found to have acted in bad faith by willfully and intentionally not disclosing his and his spouse's total income and net-worth on his Eligibility Verification Reports submitted in 1993 through the present. He chose to withhold these material facts with full knowledge that the pension rate is based upon all income from all sources to himself and his spouse who is included in the pension award.

R. at 180. The appellant filed a Notice of Disagreement regarding the denial of waiver. R. at 204. In May 1999, the Committee again denied the appellant's request for waiver of overpayment. R. at 276-79. The appellant appealed to the Board, and the Board issued the decision on appeal on January 17, 2001. R. at 1-14.

## II. ANALYSIS

### A. VCAA

The appellant contends that the notice provision in 38 U.S.C. § 5302(a), which deals with timeliness for filing a request for waiver of indebtedness as discussed in *Barger v. Principi*, 16 Vet.App. 132, 138 (2002), is separate and distinct from the notice provision that applies to substantive claims pursuant to section 5103(a). He further asserts that the Court should distinguish section 5103(a) notice and determine that such notice is still required in any claim under chapter 53 that addresses how to substantiate a timely filed request for waiver of indebtedness. The Secretary counters that *Barger* held that the notice provisions of the VCAA do not apply to claims for waiver of overpayment under chapter 53. The Secretary also asserts that the term "claimant" as used in the VCAA applies only to claims for benefits under chapter 51, and that the appellant is not seeking benefits, but rather has already received a benefit, and is instead requesting a waiver of indebtedness, in effect, challenging the indebtedness and, therefore, he is not a claimant under section 5100.

In *Barger* the Court stated:

> The statute at issue in this appeal is found in chapter 53 of title 38 of the U. S. Code, which concerns special provisions relating to VA benefits. The statute contains its own notice provisions, which, as the Court has held herein, the Board did not misinterpret. The notice and duty-to-assist provisions of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), which the Secretary argues generally should require a remand of this

3

> matter, are relevant to a different chapter of title 38, and do not apply to this appeal. *See generally Smith (Claudus)*, *supra* (holding that VCAA did not affect issue of whether federal statute allowed payment of interest on past-due benefits).

*Barger*, 16 Vet.App. at 138. The underlying issue in *Barger* was whether the appellant had submitted a timely request for waiver of overpayment and whether the notification the Secretary provided was adequate. In this case, the Board denied a waiver of overpayment on the merits because it determined that the appellant had acted in bad faith. R. at 14. The language in *Barger* clearly and explicitly precludes application of the VCAA notice provisions to chapter 53 proceedings, stating "[t]he notice and duty-to-assist provisions of the . . . [VCAA], which the Secretary argues generally should require a remand of this matter, are relevant to a different chapter of title 38, and do not apply to this appeal." The Court notes that section 5302 makes no reference to a "claimant" as does section 5100 of chapter 51.

Chapter 53 of title 38 is titled "Special Provisions Relating to Benefits," whereas chapter 51 is titled "Claims, Effective Dates, and Payments." A review of the sections of chapter 53 indicates that chapter 53 addresses various legal bars or limitations upon the grant of benefits (for example: nonassignability and exempt status of benefits, waiver of recovery of claims, certain bars to benefits, minimum active-duty service requirement, prohibition against duplication of benefits, etc.). Chapter 53 does not address the adjudication or granting of benefits as does chapter 51. *See* 38 U.S.C. §§ 5301-5319. In the context of a motion for clear and unmistakable error (CUE), the Court has observed that the "[n]ew § 5100 defines the term 'claimant,' *for purposes of chapter 51 of title 38*, as 'any individual applying for, or submitting a claim for, *any benefit* under the laws administered by the Secretary.'" *Livesay v. Principi*, 15 Vet.App. 165, 179 (2001) (en banc) (first emphasis added). The Court in *Livesay* held that a motion for CUE did not encompass a claim for benefits under chapter 51. *Id.* "CUE provides a procedural device that allows for a final RO or Board decision to be reversed or revised. A litigant alleging CUE is not pursuing a claim for benefits. . . , but rather is collaterally attacking a final decision." *Id.* at 178-79. Similar reasoning applies in this case. An applicant for waiver of overpayment is not seeking a benefit as defined under chapter 51. Rather he is seeking waiver of an overpayment as provided for under section 5302 of chapter 53. Although the Court in *Barger* did not explain its rationale for holding that the VCAA does not apply

4

to chapter 53, the plain language of the statute leads to the conclusion that it does not. The Secretary contends that waiver of an overpayment is not a *claim for benefits* under chapter 51, but, rather, an *application for a waiver* of overcompensation under chapter 53. We agree. The appellant is not seeking benefits in the first instance under chapter 51, but, rather, having received an overpayment of benefits creating an indebtedness, he is requesting a waiver of recovery of that indebtedness under chapter 53.

The Court notes, alternatively, that, even if section 5103(a) were to apply to waivers under chapter 53, the Court in *Barger* observed that section 5302(a) contains a notice provision specific to a request for waiver of an overpayment. The specific notice provisions of section 5302(a) would supercede the general VCAA notice provisions of section 5103(a) when the issue is waiver of indebtedness. *See Zimick v. West*, 11 Vet.App. 45, 51 ("[S]pecific statute will be given precedence over a more general one.").

## B. Waiver of indebtedness

The Secretary may grant a waiver of indebtedness where he determines that the collection of the debt would be against "equity and good conscience." 38 U.S.C. § 5302; 38 C.F.R. §§ 1.962, 1.963(a) (2003). A waiver may be denied if there is an "indication of fraud, misrepresentation or bad faith" on the part of the individual seeking a waiver. 38 U.S.C. § 5302(c); *see also* 38 C.F.R. § 1.965(b) (2003) (fraud, misrepresentation, lack of good faith, and the existence of bad faith). A determination by the Board that there was bad faith is a factual determination which is reviewed under the "clearly erroneous" standard. *East v. Brown*, 8 Vet.App. 34, 40 (1995). Under the "clearly erroneous" standard,

> [i]f the [fact finder]'s account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985)). The Board must also provide a "[w]ritten statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues

of fact and law presented on the record." 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57; *Erickson v. West*, 13 Vet.App. 495 (2000).

The Board determined:

> After consideration of the record and the applicable regulatory provisions, the Board finds that the veteran, who clearly had knowledge of the likely consequences, engaged in unfair and deceptive dealings with the VA in an attempt to gain at the VA's expense by willfully concealing information concerning income received by his spouse in 1993 and 1994, thus retaining VA benefits that he was not entitled to. The veteran was fully informed of VA actions to be taken if he improperly reported his income and thus, he had the knowledge of the likely consequences of his actions.

> Based on the evidence of record, the Board finds that the veteran purposely did not inform the VA that his spouse was earning income in order to retain the full amount of VA disability pension benefits that he was receiving. That is, the veteran, in an unfair and deceptive manner, refused to inform the VA accurately of his family income so that he could wrongfully continue to receive VA benefits to which he was not entitled or to continue receiving VA benefits in excess of which he was entitled to receive.

> In light of the foregoing, the Board finds that the preponderance of the evidence clearly establishes that the veteran engaged in bad faith when he inaccurately reported his family's income to the VA.

R. at 11. The Court has reviewed the record on appeal and the Board decision and finds that there was a plausible basis for the Board's decision. The Board provided a detailed analysis based upon the record in support of its conclusion that the appellant acted in bad faith. The Court holds that the Board was not clearly erroneous when it denied the appellant a waiver of recovery of an overpayment of veteran's improved pension benefits.

### III. CONCLUSION

Accordingly, the January 17, 2001, Board decision is AFFIRMED.