# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0181 (E)

Karen Gordon, Appellant,

v.

James B. Peake, M.D.
Secretary of Veterans Affairs, Appellee.

Beth Gordon Samargin, Intervenor.


On Appeal from the Board of Veterans' Appeals


(Decided November 21, 2008)


*Glenn R. Bergmann*, of Bethesda, Maryland, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy*, *Jr.*, Deputy Assistant General Counsel; and *Christine D. Senseman*, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a dissenting opinion.

SCHOELEN, *Judge*: This case is before the Court on the appellant's September 5, 2007, application for an award of attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for $11,945.79 in attorney fees and $103.43 in expenses for a total of $12,049.22. For the reasons set forth below, the Court will grant in part the EAJA application.

# I. BACKGROUND

In September 1943, veteran Edward E. Gordon purchased a $10,000 National Service Life Insurance (NSLI) policy. Record (R.) at 17. The veteran died in August 1995. R. at 64. On September 11, 1995, the intervenor, Beth Gordon Samargin, the veteran's daughter, filed a claim for the proceeds of his NSLI policy on behalf of her minor children (Aline and Kristiana). R. at 63. On October 13, 1995, appellant Karen Gordon, another one of the veteran's daughters, filed a claim seeking a portion of the proceeds of the veteran's NSLI policy on behalf of her two children (Kelin and Hunter). R. at 91-93. On October 20, 1995, the regional office (RO) and insurance center issued an administrative decision that disallowed Ms. Gordon's claim. R. at 95. The RO determined that the proceeds of the NSLI policy were payable to Aline and Kristiana in accordance with the veteran's December 1992 beneficiary designation. *Id*. Ms. Gordon appealed the RO decision. R. at 406. In January 1999, the Board granted Ms. Gordon's claim for equal shares on behalf of her sons. R. at 172-79. Ms. Samargin appealed the January 1999 Board decision to this Court. R. at 180-82. Ms. Gordon was not a party to the appeal. In February 2000, pursuant to a joint motion of the parties, the Court remanded this appeal to the Board for consideration of *Fagan v. West*, 13 Vet.App. 48 (1999), which was issued subsequent to the January 1999 Board decision. R. at 192-96.

In January 2001, the Board issued a decision finding that Ms. Gordon's minor children were not among the beneficiaries of the veteran's NSLI policy. R. at 214-21. In May 2001, Ms. Gordon, through counsel, appealed that decision to the Court. Ms. Samargin was not a party to the appeal. On June 28, 2001, the Secretary moved, unopposed, to remand the matter for consideration of the applicability of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, in accordance with this Court's decision in *Holliday v. Principi*, 14 Vet.App. 280 (2001). R. at 237-41. On September 26, 2001, the Court granted the Secretary's motion. R. at 236.

On October 17, 2002, the Board issued the decision here on appeal. R. at 1-12. The Board found that there was clear and convincing evidence of the veteran's intent to change his beneficiaries. However, it concluded that there was no evidence that the veteran had performed an overt act reasonably designed to effectuate his intent to change his beneficiary. R. at 11.

In its decision, the Board further concluded that VA had provided the appellant with VCAA-compliant notice. On appeal to the Court, the appellant argued that VA failed to fulfill its

notice obligations under 38 U.S.C. § 5103(a). The Secretary countered that because an NSLI beneficiary claimant is not a "claimant" within the meaning of 38 U.S.C. §§ 5100 and 5103(a), VA did not have a duty to provide Ms. Gordon with any section 5103(a) notice. Alternatively, he argued that the appellant was adequately notified of her rights under the VCAA and any notice error was not prejudicial. The Court rejected the Secretary's argument and held that VA was obligated to provide NSLI beneficiary claimants with section 5103(a) notice. *Gordon v. Nicholson*, 21 Vet.App. 270, 275-80 (2007). Additionally, the Court held that VA failed to provide the appellant VCAA notice as to the information and evidence necessary to substantiate her claim, and that this error was prejudicial. *Id*. at 280-83.

## II. ANALYSIS

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). Here, the appellant's September 2007 EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B). It also satisfies the requisite EAJA "application-content specifications," because it contains the following: (1) An allegation that the petitioner is a prevailing party; (2) a showing that he is a party eligible for an EAJA award because his net worth does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), and (2)(B); *Scarborough v. Nicholson*, 541 U.S. 401 (2004).

### A. Substantial Justification

Once an EAJA applicant alleges that the Secretary's position lacked substantial justification, the burden shifts to the Secretary to show that the Government's position was substantially justified at both the administrative and litigation stages of the matter. *See Locher v. Brown*, 9 Vet.App. 535, 537 (1996). The Court must determine whether the Government's position was "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Thus, "a position can be justified even though it is not correct," and should be considered substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2. In *Stillwell v. Brown*,

3

6 Vet.App. 291, 302 (1994), this Court announced a test for evaluating whether VA's position was substantially justified in the administrative and judicial phases:

> VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Id.*

There are a number of factors that have a bearing upon the reasonableness of the VA's administrative and litigation positions. One such factor is the evolution of VA benefits law, which has often resulted in new, different, or more stringent requirements for adjudication. *Stillwell,* 6 Vet.App. at 302; *see also Bowey v. West*, 218 F.3d 1373, 1376-77 (Fed. Cir. 2000) (holding that substantial justification shall be determined on the basis of the law in existence at the time that the Government adopted its position); *Bonny v. Principi*, 18 Vet.App. 218, 221 (2004) (stating that "in judging reasonableness during the administrative proceedings, the Court looks to the relevant, determinative circumstances, including the state of the law at the time of the Board decision"); *Moore v. Gober*, 10 Vet.App. 436, 440 (1997) (holding the same).

Cases before this Court may involve issues of first impression containing good faith arguments made by the Government that are eventually rejected by the Court. *Stillwell,* 6 Vet.App. at 302-03; *Carpenter v. West*, 12 Vet.App. 316, 320 (1999). Arguments presented in a case of first impression are more likely to be considered substantially justified than those where the Court determines that the Secretary ignored existing law. *See Johnson (Leamon) v. Principi*, 17 Vet.App. 436 (2004) (holding that Secretary's position at the administrative level in promulgating and applying a regulation was substantially justified); *Carpenter, supra* (holding that it was not unreasonable for the Secretary not to have foreseen Court's expansion of 38 U.S.C. § 1318 caselaw). However, "[a] lack of judicial precedent adverse to the government's position does not preclude a fee under the EAJA." *Felton v. Brown,* 7 Vet.App. 276, 281 (1994) (quoting *Ramon-Sepulveda v. INS,* 863 F.2d 1458, 1459 (9th Cir.1988)).

In cases of first impression the Court must determine whether the issue presented "close" questions, and whether the Secretary sought an unreasonable interpretation or resolution of the matter. *See Felton*, 7 Vet.App. at 282 (citing *Marcus v. Shalala,* 17 F.3d 1033, 1038 (7th Cir. 1994) (finding that Government's contention that the questions involved were "close" was controverted by the U.S. Supreme Court's statements that the Government policies were "manifestly contrary to statute" and "made little sense" and by the "strong disapproval" of relevant regulations by several circuits of the U.S. courts of appeals)). Other factors to be considered include whether "the statutory scheme to be considered is complex, or . . . the analysis required, even for a straightforward statute, is 'exceptional.'" *Golliday v. Brown,* 7 Vet.App. 249, 255 (1994) (citing *Stillwell*, 6 Vet. App. at 303); *see also Pottgieser v. Kizer*, 906 F.2d 1319, 1324 (9th Cir. 1990) (same).

Here, as to the Secretary's administrative position, the Board found that the Secretary sent the appellant notice that satisfied the VCAA notice requirements. R. at 6. The Board concluded that VA had informed the appellant "which information and evidence that the appellant was to provide to VA and which information and evidence that the VA would attempt to obtain on behalf of the appellant." *Id*. The Court held that the Board erred when it relied on a variety of postdecisional documents to support its conclusion that VA had provided the appellant with VCAA-compliant notice. *Gordon*, 21 Vet.App. at 282. The Secretary argues that his administrative position was reasonable because "the BVA was following the law and deemed that Appellant had adequate notice and opportunities to participate effectively in her appeal." Secretary's Response at 16. In this vein, the Secretary notes that the decision of the U.S. Court of Appeals for the Federal Circuit in *Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006), which held that the Board could not rely on postdecisional documents to find VCAA- compliant notice, had not yet been issued when the Board issued the decision in this case.

Although *Mayfield* was decided after the Board decision in this case, the Court agrees with the appellant that the Secretary reads the Court's opinion in this case too narrowly. *See* Appellant's Reply at 5 (arguing that "[b]ecause the Court's remand was not based solely on the intervening decision in *Mayfield*, but, rather, on the Secretary's failure to provide adequate notice, *Mayfield* does not render the Board's position substantially justified"). In addition to holding that the Board erred in relying on postdecisional documents to find VCAA-compliant notice, the Court also held that

5

"Ms. Gordon never received *any* notice directed to satisfying the requirements of section 5103(a)." *Id*. (emphasis added). The Court further held that "nothing in the record relied upon by the Board indicates that Ms. Gordon was ever adequately informed of what evidence was necessary to substantiate her NSLI beneficiary claim." Appellant's Reply Br. at 5. Thus, contrary to the Secretary's argument, the Court's decision in this case was not based solely on the Board's unlawful reliance on postdecisional documents. Given the totality of circumstances, the Court finds that the Secretary's administrative position was not reasonable in law or fact.

The Court also finds that the Secretary's litigation position was not substantially justified. The Secretary argues that his litigation position was substantially justified because this case involved an issue of first impression. He states that the Court should find his litigation position substantially justified "[g]iven the sophisticated nature of the issues involved, the legitimate differences of opinion on the legal issues, and the evolving case law." Secretary's Reply at 10-11.

On appeal to the Court, the Secretary argued that because the VCAA does not apply to NSLI claims, VA did not have a duty to provide Ms. Gordon with any section 5103(a) notice. This position is inconsistent with the Board's October 2002 decision here on appeal and the position that the Secretary took in 2001 when he sought a remand of this case so that the Board could consider the application of the VCAA to this case. The crux of the Secretary's argument in his 2005 brief was that a person claiming to be a beneficiary under an NSLI policy is not a "claimant" within the meaning of section 5100, because the proceeds of the NSLI policy are not "benefits" within the meaning of the statute and instead are merely proceeds, resulting from a contract between the veteran and VA. *Gordon*, 21 Vet.App. at 277. The Secretary attempted to make a distinction between veterans who apply for NSLI policies and beneficiaries who seek proceeds under the policies. *Id*.

The Court rejected the Secretary's argument, concluding that the Secretary's interpretation violated the plain meaning of the statute. The Court held that the plain language in section 5100 broadly defines "claimant" as an "individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." *Id*. at 277-78. The Court found that the "statute clearly applies to any benefit that a claimant seeks and makes no distinction that would exclude certain types of 'benefits.'" *Id*. at 278. The Court refused "to draw the distinction urged by the Secretary," finding that such a distinction had "no basis in the statutory language of section 5103(a)."

*Id*. Accordingly, the Court held that "while there is a difference in the nature of the 'benefits' flowing to the veteran and his beneficiary, . . . both [the] veteran and beneficiary are 'claimants' seeking 'benefits' within the meaning of section 5100. " *Id*.

The Court also found that the Secretary's argument ignored the plain language of section 5103(b). *Id*. at 279-80. The Court held that if the Secretary were correct, that section 5103(a) notice did not apply to NSLI beneficiary claims, there would be no need for the section 5103(b)(2) exception.[1] *Gordon, supra*. The Court held that "[a]fter examining the plain meaning of sections 5100, and 5103, it is clear that Congress intended that a 'claimant for VCAA purposes includes an individual seeking the proceeds of a deceased veteran's NSLI policy." *Gordon*, 21 Vet.App. at 280.

The Court also observed that its merits decision was consistent with other decisions issued by the Court regarding the VCAA and the proper construction of the word "claimant" as used in the statute. For example, in *Livesay v. Principi*, 15 Vet.App. 165, 170 (en banc),[2] the Court recognized that a "claimant" within the meaning of section 5100 includes a person applying for or seeking benefits under part II ("GENERAL BENEFITS") or III ("READJUSTED AND RELATED BENEFITS") of title 38. *Gordon*, 21 Vet.App. at 278; *see also Lueras v.Principi,* 18 Vet.App. 435, 439 (2004) (holding VCAA does not apply to claims for waiver of overpayment of pension benefits under chapter 53 because an applicant for waiver of overpayment is not seeking benefits under chapter 51; rather the applicant is requesting a waiver of recovery of indebtedness). The Court noted that the NSLI benefit program is located in part II ("GENERAL BENEFITS") of title 38. *Id*. Thus, we concluded that "when viewed within the context of title 38, NSLI-beneficiary claimants are 'claimants' within the meaning of section 5100." *Id*.

The Court is mindful that there was a dissent in the underlying merits decision. *See Gordon*, 21 Vet.App. at 283-90 (Lance, J., dissenting). However, the Court concludes that this is not a

---

[1] Section 5103(b)(2) provides that the one-year time limit within which a claimant has to provide evidence to the Secretary after section 5103(a) notice is provided does not apply to "government insurance claims."

[2] The Court notes that *Livesay* was decided by this Court prior to the Court's 2001 remand to the Board for the purpose of having the Court consider the effect of the VCAA on the appellant's claim.

dispositive factor in the Court's consideration of whether the Secretary's litigation position was substantially justified. *See Ozer v. Principi*, 16 Vet.App. 475, 479 (2002). The Court concludes that the statutory question involved was not a complex or close one, or that the statutory provisions were confusing or in need of substantial interpretation. Given the plain meaning and clarity of the statutory provision in question, as stated by the Court in its underlying merits opinion, and the Court's rejection of the Secretary's argument as contrary to the plain meaning of the applicable statutory provisions, the Court concludes that, based on the totality of circumstances, the Secretary's litigation position that VA did not have duty to provide Ms. Gordon with any section 5103(a) notice did not have a "reasonable basis in law and fact" and was not substantially justified.

The Secretary also argued that the appellant was adequately notified of her rights under the VCAA and any notice error was not prejudicial because she had actual knowledge of the information or evidence that she needed to submit in support of her claim. The Secretary's litigation position on the adequacy of the VCAA notice is identical to its administrative position that the Court has held was not substantially justified. For the reasons discussed earlier in this decision, the Court finds that the Secretary's litigation position has no reasonable basis in fact or law and is therefore not substantially justified. With regard to the issue of prejudicial error, the Court in its merits decision found that there was no evidence in the record to support the Secretary's argument that the appellant had actual knowledge of the evidence and information to submit in support of her claim. The Court finds that there was no reasonable basis in fact or law to support the Secretary's argument that the appellant was not prejudiced by the VA's failure to provide her with section 5103(a) notice.

## B. Reasonableness of Fee

Although the Secretary has not disputed other aspects of Ms. Gordon's EAJA application, the Court nevertheless may only award reasonable fees and expenses. 28 U.S.C. § 2412(d); *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997) ("Once it is determined that a claimant is entitled to an EAJA award, the Court still must determine what is a 'reasonable' fee."); *see also McDonald v. Nicholson*, 21 Vet.App. 257, 263 (2007) ("In determining reasonableness, the Court will consider whether the hours claimed are (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983), or *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997); or (3) persuasively

8

opposed by the Secretary."); *Chesser v. West*, 11 Vet.App. 497, 501 (1998) ("The Court has wide discretion in the award of attorney fees under the EAJA."). Moreover, it is Ms. Gordon's burden to demonstrate the reasonableness of her request for fees and other expenses. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984) (stating that the appellant bears the burden of demonstrating that the number of hours expended are reasonable).

In this instance, the $103.43 claimed for copying, faxing, postage, and phone calls is reasonable on its face. However, the claimed 80.2 hours of attorney work is not. The initial brief presents routine arguments as to the adequacy of notice and the Board's statement of reasons or bases, yet 26.7 hours were spent in its preparation, without sufficient explanation for the more than three days of work spent in its preparation. In contrast, the reply brief addresses a novel issue raised by the Secretary, and it was researched and briefed in 13.2 hours. Similarly, it took about 7 hours to research and prepare a supplemental brief in response to the Court's request for additional briefing with regard to changes in the law. The time spent on the reply and supplemental briefs is plausibly reasonable on its face. However, given the routine issues and arguments presented in the initial brief, the 26.7 hours spent in its preparation appear excessive; 15 hours is plausibly reasonable to research and prepare the initial brief, and this will be awarded. *See McDonald* and *Chesser*, both *supra*; *Baldridge v. Nicholson*, 19 Vet.App. 227, 238 (2005) ("'[T]he adversary should not be required to pay for more than the normal time the task should have required.'" (quoting *Ramos v. Lamm*, 712 F.2d 546, 554 (10th Cir. 1983))); *see also Hensley*, 461 U.S. at 434 ("[A]n applicant for EAJA fees must treat the government as though it were a private client by exercising the same kind of billing judgment that an attorney would use in preparing a billing statement for a private client.").

Additionally, the record on appeal in the underlying merits case is not large (255 pages), yet 11.7 hours were spent preparing and reviewing it and the underlying claims file, without any explanation of the need for such time-consuming effort. Given the relatively small size of the record and the routine nature of the issues, 6 hours to review and identify the issues is plausibly reasonable and will be granted. *See McDonald* and *Chesser*, both *supra*; *see also Hensley* and *Baldridge*, both *supra*. Further, 1.8 hours was spent preparing a response to a show cause order associated with the failure of Ms. Gordon's prior attorney to comply with these Court's rules and will not be approved

9

because the response was due, at a minimum, to attorney representation issues. *Cf. Hensley*, 16 Vet.App. at 489-99 (rejecting reimbursement for time spent on motions for extended time due to inefficient workload management); *see also Chesser*, *surpa*. The time spent on other matters appears reasonable on its face and will be approved in full. Accordingly, of the $11,945.79 claimed, $9,085.95 will be approved for 61 hours at the claimed rate of $148.95 per hour.

The dissent takes the position that EAJA fees may not be granted in this case, in part, because he argues that "Congress intended that the federal government take a 'hands off' approach to the insurance[,] business." However, he fails to note that NSLI is not private insurance, but was, in fact, "set up by Congress [for the Government] to provide life insurance coverage to members of the United States military forces." *Young v. Derwinski*, 1 Vet.App. 70, 71(1990); *see also* National Service Life Insurance Act of 1940, 54 Stat. 1008. However, our dissenting colleague's main contention is that because the legal dispute in the NSLI proceedings before VA is one between the appellant and Ms. Sarmagin, the purported beneficiary under the policy, the Secretary's role in the NSLI proceedings is merely that of a neutral stakeholder.[3] For this reason, the dissent argues that Ms. Gordon's appeal of the October 17, 2002, Board decision to this Court is not a civil action "brought against the Government" within the meaning of the EAJA.[4] *See* 28 U.S.C. § 2412(d)(1)(A).

The majority disagrees with the dissent that the Secretary is a "neutral stakeholder" in NSLI proceedings. A stakeholder is a disinterested third party who holds money or property, the right to

---

[3] In taking the position that EAJA does not apply to appeals to this Court involving NSLI claims, the dissent does not take into account that NSLI proceedings do not necessarily involve disputes between two parties over the proceeds of an NSLI policy. *See, e.g., Lee v. West*, 13 Vet.App. 388 (2000) (involving a claim for an earlier effective date for the payment of monthly disability benefits under the total disability insurance provision of the appellant's NSLI policy); *Saunders v. Brown*, 4 Vet.App. 320 (1993) (involving a challenge to the statutory requirement that application for Service Disabled Veterans Insurance, a form of NSLI, be made within two years after the date of award of service connection).

[4] Our dissenting colleague argues that the EAJA would not be applicable to this case if the underlying action had been brought in Federal district court pursuant to 38 U.S.C. § 1984 (2008). Assuming arguendo this is correct, it nevertheless is inapposite. The issue is whether a prevailing party may recover EAJA fees for actions brought before this Court, not what is or is not permitted before other courts.

which is disputed between two or more parties. BLACKS LAW DICTIONARY 823, 1412 (7th ed. 1999). Such a stakeholder, who is uncertain as to which of the competing parties is entitled to the property, may file an interpleader suit to have a Federal district court determine who should receive the property and avoid multiple liability. *See* Fed. R. Civ. P. 22.

Unlike a "neutral stakeholder" who sits back and awaits a decision directing to whom it must pay benefits, the Board is the decisionmaker, determining which of the parties is entitled to the proceeds of the NSLI policy. *See* 38 U.S.C. § 38 C.F.R. § 20.101 (a) (14) (2008) (noting that the Board has jurisdiction to decide matters arising under the National Service Life Insurance program); 38 C.F.R. § 8.30 (2008) (noting that the regulations governing appeals to the Board "will be followed in connection with appeals to the Board of Veterans ['] Appeals involving questions pertaining to the . . . disallowance of claims for insurance benefits."). Here, it is the Board's October 17, 2002, decision regarding the appellant's NSLI beneficiary claim that is subject to judicial scrutiny. The dissent cites *In re Perry*, 882 F.2d 534, 539-40 (1st Cir. 1989), for its language that EAJA is not applicable in Occupational Safety and Health Review Commission (OSHRC) cases when the OSHRC acts as a purely adjudicative entity. However, Ms. Gordon, like any other claimant who comes before this Court, seeks review of an adverse Board decision denying her claim. She has challenged a Board decision that she considers unreasonable in an effort to vindicate her rights to the proceeds of Mr. Gordon's NSLI policy. As such, her EAJA application is permitted by the plain language of the EAJA statute and is consistent with its purpose of removing the obstacle of attorney fees that might otherwise prevent an individual from challenging unreasonable governmental action. *Comm'r, INS v. Jean,* 496 U.S. 154, 163 (1990).[5] There is no basis to exempt her appeal from the EAJA.

---

[5] The dissent also argues that EAJA should not apply to NSLI cases because they do not involve "broad reaching public policy implications." Assuming arguendo that the EAJA is only applicable in such cases, we note that the underlying precedential opinion resolves the issue of congressionally imposed notice requirements for NSLI claims – itself a public policy issue.

## IV. CONCLUSION

In this matter, the Court holds that the Secretary was not substantially justified in his arguments either at the administrative and litigation levels. On the basis of the foregoing analysis, the petitioner's application for attorney fees and expenses is GRANTED IN PART, in the amount of $9,189.38.

LANCE, *Judge*, dissenting: I must respectfully dissent from the majority's decision to award EAJA fees in this matter. As an initial note, while the majority cites *Ozer v. Principi*, 16 Vet.App. 475, 479 (2002) to support its contention that "a dissent in the underlying merits decision" "is not a dispositive factor in the Court's consideration of whether the Secretary's litigating position was substantially justified," *Ozer* did not rest on those grounds. The Court in *Ozer* found that the dissenting opinion supported the conclusion that the Secretary's position *was* justified. *Id.* While a dissenting opinion may not be a decisive factor, it is nonetheless *a factor* that the majority fails to consider. Instead, the majority brushes off the problems raised by construing an NSLI dispute as a "claim" without any analysis, as it did in the merits decision. In fact, the majority fails to cite to a single case where the Secretary's position was found to be not substantially justified after a divided panel decision or to present any useful framework for deciding when to discount a dissent. Nonetheless, my primary objection to granting the EAJA application in this case is my belief that EAJA was intended to apply only to claims against the Government and not to disputes between private parties where the Government is merely a stakeholder.

## I. THE PLAIN LANGUAGE OF THE EAJA STATUTE

The question of whether section 2412(d)(1)(A) applies in the context of NSLI proceedings is one of statutory interpretation. "Statutory interpretation begins with the language of the statute the plain meaning of which we derive from its text and its structure." *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself." *Sursely v. Peake*, 22 Vet.App. 21, 24 (2007) (citing *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (quoting *Chevron U.S.A.,*

*Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984))). "'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (alteration in original) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)); *see Sweitzer v. Brown*, 5 Vet. App. 503, 505 (1993); *see also Gardner v. Derwinski*, 1 Vet. App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) ("[I]f 'the plain meaning of a statute is discernible, that plain meaning must be given effect.'" (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995))); *Smith v. Derwinski*, 2 Vet.App. 429, 431 (1992) ("[W]hen a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" (second alteration in original) (quoting *Demarest v. Manspeaker*, 498 U.S. 184 (1991))).

EAJA requires that the civil action for which fees are sought be "brought *against the United States*." *See* 28 U.S.C. § 2412(d)(1)(A) ("[A] Court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . ., including proceedings for judicial review of agency action, *brought by or against the United States* . . . ."(emphasis added)). In the instant case, the Secretary's role in NSLI proceedings is that of a "neutral stakeholder." *Gordon v. Nicholson*, 21 Vet.App. 270, 283 (2007) (Lance, J., dissenting). In essence, the legal dispute here was one between the appellant (Ms. Gordon on behalf of her two children, Kelin and Hunter) and the other purported beneficiary under the policy (Ms. Samargin on behalf of her minor children, Aline and Kristiana). *Id.* at 273. In such an NSLI proceeding, there is generally no civil action "brought against" the Government. Therefore, based on the plain language of section 2412(d)(1)(A), in this context an award of attorney's fees would be inappropriate.

## II. THE LEGISLATIVE HISTORY OF EAJA

A review of the legislative history of EAJA confirms that NSLI proceedings were not the type of action Congress intended to be covered under EAJA. "Concerned that the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than

13

vindicating their rights, simply by threatening them with costly litigation, Congress enacted the EAJA, waiving the United States' sovereign immunity and general statutory immunity to fee awards and creating a limited exception to the 'American Rule' against awarding attorneys fees to prevailing parties." *Pierce v. Underwood*, 487 U.S. 552, 575 (1988) (citing S. REP. NO. 96-253, at 1-6 (1979)). "Under the American Rule, each party pays its own attorney's fees; a prevailing party cannot recover attorney's fees from a losing party absent express statutory authority or bad faith unless the litigation involves a common fund or confers a substantial benefit on an ascertainable group." *Johnson v. U.S. Dep't of Hous. and Urban Dev.*, 939 F.3d 586 (1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

Congress prefaced EAJA with a statement purpose: "The bill rests on the premise that certain individuals . . . may be deterred from seeking review of, or defending against, *unreasonable governmental action* because of the expense involved in securing the vindication of their rights." H.R. REP. NO. 96-1418, at 5 (1980) (emphasis added). "The exception created by [EAJA] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights." *Id.* at p.10. As with the plain language of the statute, the legislative history makes clear that the crux of the EAJA's applicability is the party against whom the adversarial dispute lies. As noted above, the adversarial nature of disputes arising over NSLI proceeds pertains to the purported beneficiaries; not the Government. Therefore, the Secretary, in the context of an NSLI proceeding, is not an adverse party, as intended by Congress. "That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone a nonparty." *Kentucky v. Graham*, 473 U.S. 159, 168 (1985) (refusing to hold that a suit against a Government official in his or her personal capacity can lead to imposition of fee liability pursuant to 42 U.S.C. § 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

Additionally, EAJA

*rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy.* An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or

14

announcing more precise rules . . . . *Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights.*

H.R. REP. NO. 96-1418, at 10 (1980) (emphasis added). The italicized language demonstrates that it is unlikely that Congress intended for NSLI proceedings to be included under EAJA's statutory umbrella. A claimant's goal in an NSLI proceeding is solely to protect his or her own vested interest, i.e., entitlement to proceeds under the NSLI policy. There will not normally be any broadly reaching public policy implications because, as noted above, the Government's interest in the matter is merely that of a disinterested stakeholder.[6] Should one claimant prevail over another purported beneficiary, it will not affect Government policy nor the public fisc. *See In re Perry*, 882 F.2d 534, 539-40 (1st Cir. 1989) (noting that "petitioners' suit did not — indeed, could not— assist in refining and formulating public policy, an important consideration in assessing EAJA's reach") (comparing *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2nd Cir. 1984) (stating that Congress did not intend that EAJA apply to habeas petitions that are "dedicated to vindicating individual rights based on the Constitution rather than refining rules and policy")).

Otherwise stated, the taxpayer is generally unaffected by which claimant ultimately prevails in an NSLI dispute because the remedy will be uniquely tailored to that individual claimant; i.e., an award of proceeds available under the policy. Conversely, the public fisc will be adversely affected should this Court extend EAJA to the NSLI proceeding context. This is so because taxpayer dollars will ultimately be spent funding litigation between two private parties whose outcome will solely

---

[6]I would also note that the McCarran-Ferguson Act provides that "the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. In passing this Act, Congress noted that "[f]rom its beginning, the business of insurance has been regarded as a local matter, to be subject to and regulated by the several States." Report of the House Judiciary Committee on the McCarran-Ferguson Act, S. 340, Feb. 13, 1945, 1945 U.S. Code Congressional Service, p. 670. In essence, Congress intended that the Federal Government take a "hands off" approach to the insurance business declaring that "the continued regulation and taxation by the several States of the business of insurance is in the public interest." *Id.* at 672. The fact that Congress has explicitly kept the Federal Government out of life insurance regulation to the extent possible supports the proposition that there is little, if any, pubic policy to be refined by NSLI litigation.

affect their alleged and respective interests. Should an NSLI claimant obtain a remand at this Court, an award pursuant to EAJA will necessarily be implicated, regardless of the fact that the underlying issue or dispute involves the Secretary only in a nominal capacity.

## III. THE SECRETARY'S ROLE IS ADJUDICATORY NOT ADVERSARIAL

If the Court were to hold that EAJA does not apply in this matter, it would not be alone in this interpretation. As noted above, in a dispute arising over NSLI proceeds, the Secretary is tasked with resolving any controversy that arises between alleged beneficiaries, and he must assign the proceeds accordingly. Thus, the Secretary's role in this context is more akin to that of an adjudicator than an adversary and awarding EAJA fees in this case would be the equivalent of ordering a Federal district court judge to pay a party's legal fees after a decision is reversed on appeal.

In *Perry*, the United States Court of Appeals for the First Circuit addressed the question of "whether a purely adjudicative governmental entity, like OSHRC [(the Occupational Safety and Health Review Commission)], might ever be held to suffer a fee award under EAJA." 882 F.2d at 535. Recognizing "that the Secretary, through OSHA [(the Occupational Safety and Health Administration)] promulgates safety and health standards for businesses" and "it is the OSHRC . . . which is given the task of 'carrying out adjudicatory functions under [title 29],'" *Perry*, while distinguishable, is nonetheless instructive with regard to EAJA awards when the administrative body's role is "purely adjudicative." *Id*. at 536. The First Circuit observed that EAJA was designed to encourage parties to vindicate their rights against the Government, not other private parties. *Id.* at 539. The First Circuit then reasoned:

> We are hard-pressed to find that this purpose was addressed in any way to unreasonable *adjudicatory* action; elsewise, we would expect Congress to have extended EAJA well beyond litigation to which the United States was a party. After all, if EAJA was designed to ameliorate adjudicators' excesses, then reason dictates that private litigants battling with each other should be able to recover attorneys' fees from a federal court or other adjudicative body whenever one of them successfully appeals an unreasonable order or mindless decision. Yet, even petitioners do not contend that the Act sweeps so broadly. The requirement of party status-that the civil action must be one "by or against the United States," 28 U.S.C. § 2412(d)(1)(A)—is, we think, powerful evidence of an intent to exempt "pure" adjudicators from EAJA's embrace.

16

*Id.* (emphasis in original). The First Circuit concluded:

> [W]e have been able to find no clear indication of a congressional intent to extend EAJA liability to purely adjudicative entities. Although the wording of the Act seems to leave the question open, the legislative purpose and history strongly suggest that Congress did not have adjudicatory functions in mind when enacting EAJA or when later amending it. And, any doubt must be resolved in favor of nonapplicability since courts are duty bound to construe stingily waivers of the federal government's sovereign immunity.

*Id.* at 545.

In the instant case, the dispute resolved by the Court was the scope of the Secretary's duty to assist purported NSLI beneficiaries under section 5103(a). Appellant Gordon won only a procedural victory; the Court's merits decision did not get her NSLI proceeds. Rather, it merely instructed the Secretary to provide her with notice of how to defeat Ms. Samargin's claim to the proceeds. Arguably, the Secretary will also have to provide Ms. Samargin with similar notice. *See Gordon*, 21 Vet.App. at 289 (Lance, J., dissenting). Thus, the scope of the majority opinion deals more with how the parties will be able to defeat each other's claims on remand rather than with how to defeat a litigating position of the Government exercised through the Secretary. To the extent that the Secretary can be viewed as an "adjudicator" between competing claims for insurance proceeds, *Perry* weighs in favor of concluding that an award of EAJA fees and expenses in this context is inappropriate.

### IV. SOVEREIGN IMMUNITY

The Government is immune from claims for attorneys fees, except to the extent that it has waived such immunity. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983). "Waivers of immunity must be 'construed strictly in favor of the sovereign,' *McMahon v. United States*, 342 U.S. 25, 27 (1951), and not '[enlarged] . . . beyond what the language required.'" *Id.* at 685-86 (quoting *E. Transp. Co. v. United States*, 272 U.S. 675, 686 (1927)). Unlike *Richlin Security Service Co. v. Chertoff*, where the Supreme Court noted that it did not need to resort to the sovereign immunity canon of construction absent any ambiguity, here both the statutory language and legislative history are sufficiently ambiguous that it would be appropriate for the Court to employ the sovereign immunity canon. 128 S.Ct. 2007, 2019 (2008). Narrowly construing section

2412(d)(1)(A), the Court should conclude that an award pursuant to EAJA is not appropriate in the NSLI context. *See Ardestani v. INS*, 502 U.S. 129, 137 (1991) ("Once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.'") (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)); *Perry*, 882 F.2d at 544 ("[S]tatutes which, like EAJA, constitute a surrender of federal sovereign immunity must be construed narrowly; consequently, the government's immunity cannot be overridden except where a plain congressional intent to do so can be shown."). As the dispute in this matter is not comparable to any in which EAJA fees are available, the Court must err against awarding public funds to fuel a purely private dispute that serves no public purpose.

## V. EAJA WOULD NOT BE APPLICABLE IF THIS ACTION HAD BEEN BROUGHT IN FEDERAL DISTRICT COURT

One final strike against awarding EAJA fees in this matter is that the Government would never have been liable for such fees if the case had been brought in Federal district court. "Unlike the traditional nonadversarial claims that the Secretary adjudicates, disputes over NSLI proceeds may also be brought in Federal district court, a distinctly adversarial forum." *Gordon*, 21 Vet.App. at 286 (citing *Young v. Derwinski*, 1 Vet.App. 70, 72 (1990) (holding that section 1984 jurisdiction is not exclusive)); *see also* 38 U.S.C. § 1984(a).

It is not contested that attorney fees and costs are generally available in cases appealed to the Court where an appellant otherwise meets the requirements for such an award. *See* Federal Courts Administration Act of 1992 (FCAA), Pub. L. No. 102-572, 106 Stat. 4513 (Oct. 29, 1992) (amending section 2412(d)(2)(f) to add the Court to EAJA's definition of "court"); *see generally* 38 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 541 U.S. 401, 407-08 (2004). Under 38 U.S.C. § 5904(d)(1), "[w]hen a claimant and an agent or attorney have entered into a fee agreement . . . , the total fee payable to the agent or attorney may not exceed 20[%] of the total of any past-due benefits awarded on the basis of the claim." Where such a fee agreement is entered, it "shall not prevent an award of fees and other expenses under section 2412(d)." FCAA § 506(c), 106 Stat. at 4513. However, "when an attorney receives fees under both a qualifying fee agreement and the EAJA for the same work, the EAJA fees go first to reimburse the client for what he or she

18

had paid under the fee agreement." *Shaw v. Gober*, 10 Vet.App. 498, 503 (1997) (citing *Curtis v. Brown*, 8 Vet.App. 104, 108-109 (1995)). It is clear from both the statutes and the caselaw interpreting them that Congress explicitly intended to make EAJA applicable in situations where fee agreements had been entered into pursuant to section 5904(d)(1).

Section 1984(g), in contrast, provides, in pertinent part, that the district court "shall determine and allow reasonable fees for the attorneys of the successful party or parties . . . not to exceed 10[%] of the amount recovered and to be paid by the Department out of the payments to be made under the judgment." No provision extends the EAJA umbrella to cover the provision of section 1984 as FCAA § 506(c) does in the case of an ordinary contingency fee agreement. There is also no caselaw interpreting or applying section 2412 in cases involving section 1984 in the district courts. Rather, it appears that the mechanism by which an attorney may be compensated in such situations is governed exclusively by section 1984(g). Section 1984(g) is not a fee shifting statute, in that it does not authorize the prevailing party to recover fees from the losing party. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 803 n.12 (2002). Rather, "it authorizes fees payable from the successful party's recovery." *Id.* at 802. Accordingly, the decision of the majority creates a nonsensical situation where the Government's potential liability for attorney fees depends on the forum chosen even though the claim itself is the same.[7]

This leads me to the belief that the effect of this holding may be to end the adjudication of such claims in the VA system. Under 38 U.S.C. § 1984(a), the Secretary has the power to remove

---

[7]I also note that it makes very little sense for Congress to provide that fees are limited to 10 percent of the proceeds if the case is brought in Federal district court, but that an attorney can receive 20 percent of the proceeds if the matter is litigated through VA. This incongruity suggests that the Court was incorrect in its decision that VA has jurisdiction over such disputes. *See Young*, *supra*. If Congress had truly intended VA to exercise concurrent jurisdiction over NSLI claims, it is highly probable that it would have gone to some effort to harmonize the fee provisions so that beneficiaries who choose to use the VA system would not end up paying more to their attorneys than those who proceed in Federal district court. Nonetheless, while jurisdiction may be raised at any time, *Fugere v. Derwinski*, 972 F.2d 331, 334 n.5 (Fed. Cir. 1992), *Young* cannot be overturned by another panel of this Court. *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by en banc opinion of this Court or by decision of the U.S. Court of Appeals for the Federal Circuit or U.S. Supreme Court). Accordingly, further discussion of this issue is beyond the scope of the issues currently before the panel.

such actions to Federal district court through a bill of interpleader once it becomes apparent that there is a dispute over NSLI proceeds. By exercising this power, the Secretary can — in effect — recapture the sovereign immunity that the majority ignores and free himself from the ethical minefield of being required to simultaneously advise both sides as to how to defeat each other's claims before acting as a neutral adjudicator. *See Gordon*, 21 Vet.App. at 289 (Lance, J., dissenting); *cf.* ABA Model Rules of Prof'l Conduct R. 1.7 (2007) (Conflict of Interest: Current Clients), R. 1.8 (2007) (Conflict of Interest: Current Clients: Specific Rules); ABA MODEL CODE OF JUDICIAL CONDUCT Canon 3 ("A Judge Shall Perform the Duties of a Judicial Office Impartially and Diligently."). Accordingly, the majority's attempt to awkwardly graft nonadversarial rules — both on the merits and the fee proceeding — onto a proceeding that is inherently adversarial may result in all these matters being driven to the adversarial forum better suited for actions where the Secretary is merely a stakeholder.

## VI. CONCLUSION

In sum, it is clear, based on the language of § 2412(d)(1)(A), the legislative history surrounding its enactment, and the fee provision governing suits on insurance brought pursuant to section 1984, that EAJA was not intended to apply to attorneys fees and costs stemming from administrative adjudications over NSLI proceeds. Simply stated, the public fisc is not a treasure chest to be used to fund purely private litigation in which the Government claims no stake. Accordingly, I must dissent from the majority's conclusion that EAJA fees may be awarded in this case.