Citation Nr: 1434234 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 07-11 679 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUES

1. Whether an overpayment of VA pension benefits in the amount of $67,762.00 was validly created. 

2. Entitlement to a waiver of overpayment of VA pension benefits in the amount of $67,762.00. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Appellant and his wife



ATTORNEY FOR THE BOARD

John Francis, Counsel 


INTRODUCTION

The Veteran had active service from December 1964 to December 1968.

This matter comes before the Board of Veteran's Appeals (Board) on appeal from an October 2005 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada. It also comes before the Board from an adverse decision of April 2006 made by the Committee on Waivers and Compromises (Committee) of the VA RO in Reno, Nevada.

The total amount of the debt has been assessed as $ 67,762.00, which has been reduced to $ 66,866.00. A November 2013 audit recalculated the debt as $66,728.00. Nevertheless, in accordance with Franklin v. Brown, 5 Vet. App. 190 (1993), the Board must consider the entire amount of overpayment in the calculated amount of $ 67,762.00. As such, the issue is characterized as shown on the title page.

The Veteran testified at a hearing before the undersigned Veterans Law Judge sitting at the RO in March 2008. A transcript of the hearing is associated with the claims file. 

In June 2009, the Board remanded the claims for further development. 

The Virtual VA paperless claims processing system contains additional VA adjudicative and treatment records and an October 2013 appellant brief that have been considered. 



FINDINGS OF FACT

1. As a result of receiving a non-service-connected improved pension in excess of the maximum pension rate for a married veteran with children and failure to report countable family income, an overpayment of pension in the amount of $66,728.00 was created. 

2. The overpayment debt was incurred as a result of the Veteran's misrepresentation and bad faith. 

3. The Veteran was solely at fault in the creation of the overpayment because of misrepresentation of marital and dependent status. 

4. A recovery of the overpaid VA pension benefits would not result in an undue hardship of the Veteran.

5. A failure by the Veteran to make restitution would result in unfair gain to the Veteran in that he would receive both 100 percent disability compensation and pension in excess of the maximum pension rate for the same period of time.

6. There is no indication the Veteran relinquished a valuable right or incurred a legal obligation in reliance upon the additional benefits received.


CONCLUSIONS OF LAW

1. An overpayment of VA pension benefits in the amount of $66,728.00 was validly created. 38 U.S.C.A. §§ 1512, 1521 (West 2002); 38 C.F.R. §§ 3.3, 3.23, 3.60, 3.271, 3.272 (2013). 

2. The criteria for waiver of recovery of overpayment of pension in the amount of $66,278.00 are not met. 38 U.S.C.A. §§ 5302, 5304 (West 2002); 38 C.F.R. §§ 1.963, 1.965 (2013).
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013). 

In this case, notice is not required because the issue presented involves the validity of a debt created by an overpayment of benefits and a request for waiver of recovery of overpayment of VA benefits. See 38 U.S.C.A. § 5302 (West 2002); Barger v. Principi, 16 Vet. App. 132, 138 (2002) (The notice and duty to assist provisions of the statutes and regulations above do not apply to recovery matters, as chapter 51 and 53 already contain notice provisions.) Nevertheless, the Board has reviewed the case for purposes of ascertaining that the appellant has had a fair opportunity to present arguments and evidence in support of his challenge of eligibility for certain payments and request for a waiver of debt. 

The Veteran served as a U.S. Marine Corps rifleman with service in the Republic of Vietnam from May 1965 to June 1966. The Veteran contended in an October 2005 notice of disagreement that he disagreed with the creation of an overpayment of a VA non-service-connected improved pension because he had kept VA informed of his income and dependent status and that he was eligible for the pension because he was married but did not live with his wife. He requested a waiver of recovery of the debt because he was not at fault. In the March 2008 Board hearing, the Veteran did not dispute that a debt had been created but that the amount of the debt was incorrect. He further asserted that VA could not penalize him for incorrect reporting of dependent and income status while not recognizing the same dependents prior to 2005 in the award of disability compensation. 

Validity of Debt

An improved pension is payable to veterans of a period of war because of non-service-connected disability or age. Basic entitlement exists if a veteran served in the active military, naval, or air service for 90 days or more during a period of war (or other criteria not applicable in this case); is permanently and totally disabled from non-service-connected disability not the result of misconduct; and meets certain net worth and annual income requirements. 38 U.S.C.A. § 1521; 
38 C.F.R. § 3.3.

Annual income of the veteran must not exceed the maximum annual pension rate specified in 38 U.S.C.A. § 5312, increased from time to time as published in the Federal Register. 38 C.F.R. §§ 3.3, 3.23. The maximum rate of improved pension shall be reduced by the amount of the countable annual family income of the veteran. For the purposes of determining entitlement to pension under 38 U.S.C.A. § 1521, a person shall be considered as living with his or her spouse even though they reside apart unless they are estranged. 38 C.F.R. § 3.60. Income includes payments of any kind from any source during a twelve month period except for exclusions including unreimbursed medical expenses in excess of five percent of the pension rate. 38 C.F.R. §§ 3.271, 3.272. 

In June 1989, the Veteran applied for a non-service-connected improved pension. He reported that he was married but separated and that he had no source of income other than from his parents. In November 1989, the RO granted a pension and advised the Veteran that the rate of pension was directly related to his family's income and that he must notify VA of any changes in income. On five occasions from July 1990 to September 1994, the Veteran submitted pension eligibility verification forms indicating that he was not married and had no income. (The forms had a place to indicate "married but estranged" or "married but not living with spouse.") Therefore, the RO established the pension rate appropriate for a single veteran with no dependents and no income. However, in VA treatment records in January and February 1991, clinicians noted the Veteran's report of working at least intermittently as a real estate agent. In 1994 and 1995, the RO received information that the Veteran had income from gambling and adjusted the pension accordingly. 

In February 2005, a VA mental health examiner noted the Veteran's report that he worked as a security guard from 1977 to 1990 and again in the water filtration business for five years prior to 2004. 

In May 2005, the RO granted service connection for several disabilities and assigned combined ratings of 80 percent from September 2003 and 100 percent from May 2004. In response to the RO's request for information on any dependents, the Veteran submitted a declaration of the status of dependents indicating that he was married from December 1982 to July 1990 to I.L.C., from February 1991 to October 1991 to T.C.C., and from January 1992 to the present again to I.L.C. In July 2005, the RO proposed termination of pension payments effective July 1989 creating an overpayment of $67,762.00.

The Veteran appeared at a hearing at the RO in August 2005. The Veteran testified that he reported that he was not married on the advice of a VA employee. He stated that his wife T.C.C. was not working in 1991 but that his wife, I.L.C., was working and had earned income from 1992 to the present. He reported that he had sent correspondence to VA to request that the pension be stopped. He did not cohabitate with his wife until approximately 1998 or 1999 but acknowledged that he filed federal income taxes as married filing jointly with his wife and used his wife's address as the place to receive mail including his VA pension payments. 

In November 2005, the RO received the Veteran's petition for a waiver of the debt. A financial status report form was provided to the Veteran in November 2005 which he failed to complete and return. 

The Veteran appeared at a hearing at the RO in March 2006. He testified that he was not living with his wife and was not providing any financial support to his family during the period of time relevant to the creation of the debt. He stated that he was currently receiving VA disability compensation at the 100 percent rate and that his spouse was earning about $4,500 per month less business expenses for a total family income of about $5,500 per month. The Veteran submitted several statements from friends and family members confirming the dates of the Veteran's marriages, that the Veteran had two children, and that the Veteran lived apart from his wife from 1992 until 1999 because of marital discord. None of the statements addressed whether financial support was provided by either partner to the other. 

In April 2006, the RO denied a waiver of the debt, summarizing the evidence noted above and finding that the Veteran did not accurately report his marital and dependent status and income from 1991 to 1999 and did not provide the information requested regarding his spouse's income during that period of time. The RO did not address whether issues of fraud, misrepresentation, or bad faith were factors in the decision to deny waiver of debt. 

The Veteran and his wife, I.L.C., presented testimony at a Board hearing in March 2008. The Veteran and his wife testified that they had been married since 1992. The Veteran indicated that he did not dispute that a debt had been created but believed an error was made and disputed the amount of the debt. Specifically, the Veteran contended that VA should not impose a pension debt because of erroneous reporting of marriage and dependents while also not recognizing his dependents prior to 2005. The Veteran's wife testified that she did not live with the Veteran from 1992 to 2000 but that during that time, he gave financial support to both her and their son. She indicated that the Veteran never refused to pay support (although not legally obligated) and was always part of the family. She reported that during their separation, the Veteran lived with his sister and that she (the spouse) was employed and supporting her household with some assistance from him. 

At the hearing, the Veteran submitted additional evidence with a waiver of initial review by the RO. This evidence is a March 2008 statement from a couple who are acquainted with the Veteran and his wife. The couple noted that the Veteran suffered from a severe degree of disability, including PTSD, which may have impacted his ability to accurately complete the VA forms required to establish and maintain his entitlement to VA benefits. 

In June 2009, the Board remanded the claims to obtain an audit of the pension payments from start to termination and to provide the Veteran another opportunity to report his current financial status. The Board also instructed the RO to consider whether a waiver was precluded because of fraud, misrepresentation or bad faith. 

In correspondence in November 2010, the RO in Salt Lake City, Utah, provided the Veteran an audit of his pension account showing the amount of entitlement and the amount paid. Therefore, there has been substantial compliance with the Board's remand instructions. Pension and disability compensation payments were made in varying amounts from the effective date of the award in December 1989 until September 2005. These times included from 1998-99 when the Veteran and his wife acknowledged cohabitating and after the effective date of his first disability compensation award effective in September 2003. The total amount of pension and disability compensation payments was $132,932.00. Regarding the entitlement, the audit showed entitlement to payments from July 1989 to March 1991 consistent with the Veteran's documented dates of marriage and initial reports of married but separated. The Veteran was not entitled to pension from March 1991 to October 2003 during period of time when he was married (although reporting otherwise) until the effective date of disability compensation for which he was entitled to a total of $56,964.00 and he was paid $132,932, thus creating a total debt of $75,986.00. As some recovery has taken place, the balance as of the date of the audit is $66,728. 00. 

The Board finds that a debt of $66,728.00 was validly created. The Board places greater probative weight on the recent audit that represents a thorough review of all the relevant evidence and a recalculation of the entitlement at various points during the term of the pension to include unreported income by the Veteran. 

The dates of the Veteran's marriages are clearly supported by certificates of marriage and divorce in the record and are not in dispute. A significant factor in the Veteran's eligibility for pension payments after March 1991 is whether the Veteran was separated and estranged from his wives during this period of time and whether he provided support of either wife or his children. There is no evidence that the Veteran lived separately from T.C.C. during the short marriage in 1991. The Veteran and I.L.C. and family and friends credibly reported that these two did not reside together from 1992 to approximately 1998-99 when they again cohabitated. Evidence of estrangement and non-support is highly inconsistent. The Veteran repeatedly reported being unmarried for many years and at one time contended that he had no income and provided no support. However, he was a qualified real estate agent, engaged in gambling activities, worked for part of the period in a water treatment business, and unreported income was discovered on several occasions. The Board places greatest probative weight on the more recent hearing testimony by the Veteran and I.L.C. that they were always a family and that the Veteran did provide financial support. This is consistent with his use of his wife's address and their joint federal tax returns. Therefore, the Board finds that the couple may not have cohabitated continuously between 1992 and 1998-99 but that they were not estranged. Therefore, family income from all sources was countable. As the Veteran misreported his marital status and did not report all family countable income, VA must consider the family income to have exceeded the maximum payment rate and that pension was not warranted from March 1991 until terminated by the award disability compensation. An overpayment of $66,728 was validly created.

Waiver of Debt

A waiver of recovery of an overpayment or waiver of collection of any indebtedness is not warranted where any one of the following elements is found to exist: (1) fraud, (2) misrepresentation, or (3) bad faith. 38 U.S.C.A. § 5302; 38 C.F.R. § 1.965(b). 

Bad faith generally is an unfair or deceptive dealing by one who seeks to gain at another's expense; there need not be an actual fraudulent intent, but merely intent to seek an unfair advantage with knowledge of the likely consequences, and a subsequent loss to the Government. 38 C.F.R. § 3.965(b)(2). The U.S. Court of Appeals for Veterans Claims (Court) defined "bad faith" as "unfair or deceptive dealing by one who seeks to gain thereby at another's expense." See Reyes v. Nicholson, 21 Vet. App. 370, 377 (2007). The Court held that VA's interpretation of the statutory term "bad faith" (requiring an affirmative showing that (1) the appellant's conduct was undertaken with intent to seek an unfair advantage, (2) with knowledge of the likely consequences, and (3) that resulted in a loss to the government) is consistent with the legislative intent of Congress and not plainly erroneous. Id.; see also 38 C.F.R. § 1.965(b)(2). 

Absent any of these elements, the Board must consider whether the evidence establishes that recovery of the overpayment indebtedness would be against equity and good conscience, in which case recovery of that overpayment may be waived. 38 U.S.C.A. § 5302; 38 C.F.R. §§ 1.963, 1.965. 

The standard "equity and good conscience" will be applied when the facts and circumstances in a particular case indicate a need for reasonableness and moderation in the exercise of the Government's rights. The decision reached should not be unduly favorable or adverse to either side. The phrase "equity and good conscience" means arriving at a fair decision between the obligor and the Government. In making this determination, consideration will be given to the following elements, which are not intended to be all-inclusive:

1. Fault of debtor. Where actions of the debtor contribute to creation of the debt.
2. Balancing of faults. Weighing fault of the debtor against VA fault.
3. Undue hardship. Whether collection would deprive debtor or family of basic necessities.
4. Defeat the purpose. Whether withholding of benefits or recovery would nullify the objective for which the VA benefits were intended.
5. Unjust enrichment. Failure to make restitution would result in unfair gain to the debtor.
6. Changing position to one's detriment. Reliance on VA benefits results in relinquishment of a valuable right or incurrence of a legal obligation. 

38 C.F.R. § 1.965(a).

In a July 2013 supplemental statement of the case, the RO found that there was bad faith in the Veteran's misrepresentation of his income and marital status over an extended period of time despite clear written instructions on the requirement for timely and accurate reporting. 

The Board concurs and finds that there is sufficient evidence of misrepresentation and bad faith to preclude waiver of the debt. 

The Board refers to the evidence noted in the previous section. In a March 2008 statement, acquaintances of the Veteran and his wife, one of whom co-owns a home health business, noted that they were familiar with the couple's history and that the Veteran was disabled with posttraumatic stress disorder (PTSD) and several physical disabilities for which service connection was granted. The acquaintances noted federal government forms are difficult to complete even for people with advanced degrees. They noted that the Veteran lacked judgment and the ability to make rational decisions and should have been provided assistance in completing the financial and dependent reports because of his disability. None of these issues were raised by the Veteran and his wife during the Board hearing. 

In April 2010, the Veteran submitted a financial status report for 2007 and copies of federal tax returns for 2007 and 2008. The Veteran reported income from Social Security Administration and VA disability benefits of $2676 per month and his wife's monthly gross salary of $1800 per month. With substantial payments on various debts including several automobiles, he reported a negative income less living expenses. The joint tax returns show negative adjusted gross income but do not show non-taxable sources of income and do show substantial business losses. 

In March 2014, the RO granted an earlier effective date for service connection for one disability and a total rating based on individual unemployabilty, effective September 1992 to May 2004 and a 100 percent scheduler disability thereafter. This resulted in a large retroactive payment of disability benefits. Service connection for PTSD was granted and assigned a 10 percent rating effective in September 2004. 

The Board acknowledges the Veteran's report that he was told to report status as unmarried by a VA employee and that he sent letters of the correct status to VA on many occasions. Copies of these letters are not of record and could not be produced by the Veteran. Notwithstanding any incorrect advice provided by a VA employee, correspondence from the RO and the pension verification forms clearly explained the requirement to immediately report changes in income, marriage, and dependent status. The Veteran did not accurately report his marriage and dependent status and never reported the family income at any time as he was advised to do in writing on many occasions. Moreover, the Veteran and I.L.C acknowledged that the wife did have earned income throughout the relevant period of time. The assertion that the Veteran was mentally incapable of completing the necessary forms is not credible. Treatment records do not show a debilitating level of cognition or mental health incapacity. PTSD has not been rated higher than 10 percent for mild symptoms. The Board reviewed the RO's correspondence and the required forms and finds that they are very straightforward and not complex. The choices for indicating marital status and dependents are quite clear and easily understood. The Veteran obtained a real estate license and was able to engage in gambling activity that resulted in some winnings and losses. Finally, the Veteran's reports of financial support for his family during the period of the pension is highly inconsistent, first stating no support and then claiming continuous support when seeking an earlier date for dependent allowances for disability compensation. The Board finds the great weight of credible evidence is that the Veteran knowingly misrepresented his marital status, did not report countable family income, and understood that he was receiving pension payments for which he was not entitled and with a knowledge of the consequences that the payments would be terminated. Moreover, the issue of overpayment only came to light when he sought retroactive compensation for marriage and dependents that he previously denied. 

Even if misrepresentation and bad faith were not present in this case, a waiver of debt on the basis of equity and good conscience would not be warranted. The fault rests fully on the Veteran's inaccurate reporting with no fault on the part of VA. The Veteran seeks an unjust enrichment in accepting pension payments as well as disability compensation with entirely opposite marital and dependent status over the same period of time. The Board finds no current financial hardship in view of the major retroactive disability award in March 2014. Moreover, despite the apparent large business losses for tax purposes, the Veteran's spouse continued through the latest 2008 information to operate a viable business and pay debt service on several automobiles. There is no evidence that the Veteran relinquished a legal position because of reliance on pension payments during the period of time when they were in effect. 


ORDER

An overpayment of VA pension benefits in the amount of $66,728.00 was validly created. 

Waiver of overpayment of VA pension benefits in the amount of $66,728.00 is denied. 



____________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs