# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-0449

MERRILETTA HAYES, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 6, 2021                    Decided March 7, 2022)

*Nikki Lazzara*, with whom *Jillian E. Berner* was on the brief, both of Chicago, Illinois, for the appellant.

*Lance P. Steahly,* with whom *William A. Hudson, Jr.,* Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, TOTH, and LAURER, *Judges*.

TOTH, *Judge*: Merriletta Hayes is the surviving spouse of Army veteran William H. Hayes. She appeals a 2019 Board decision that declined to waive an overpayment of almost $36,000 in pension benefits. Mrs. Hayes contends that the Board erred in determining that waiver of the debt was barred because she misrepresented the extent of her income and did so in bad faith, as those terms are defined by VA law. But discerning neither any legal error in the Board's findings, nor any deficiency in the explanation supporting them, the Court affirms.

## I. BACKGROUND

Mr. Hayes served in the United States Army from 1970 to 1972 and died in August 2008 after a battle with pancreatic cancer. Some months later, Mrs. Hayes filed an application for survivor benefits, which require for eligibility that a recipient's income falls below a certain threshold. *See* 38 C.F.R. § 3.252 (2021). Section VII of the application instructed: "Payments from any source will be counted, unless the law says that they don't need to be counted. Report all income, and VA will determine any amount that does not count." R. at 174. Mrs. Hayes indicated that she received no monthly income from any source—such as wages or Social Security

Administration (SSA) benefits—and expected none in the next 12 months, stating that she was "unemployed" and "being helped by family." R. at 175.

Based on the lack of income, VA granted non-service-connected pension benefits, totaling about $660 per month. But the Agency also specifically advised Mrs. Hayes of her ongoing obligation to report any change of income and warned that failure to do so could produce an overpayment of pension benefits that VA might seek to recoup. Over the next three years, VA asked the appellant several times to verify her continued eligibility for pension benefits by disclosing any income and reminded her of her duty to report any changes in that area, but at no point did she report income from any source.

Then, in early 2013, VA informed Mrs. Hayes that she would not need to periodically verify her eligibility because VA could obtain income information directly from other government agencies. Nevertheless, she was still obligated to inform the Agency of changes to her income. Again, Mrs. Hayes reported no income.

In December 2013 VA notified the appellant that, based on information that a separate federal agency shared regarding her income, VA had overpaid her around $36,000 in pension benefits. Specifically, VA discovered that the appellant had received (at various times and in varying amounts since it initially awarded non-service-connected pension) income in the form of monthly SSA benefits, wages, unemployment insurance benefits, and proceeds from the sale of a home she inherited. Because her newly verified income exceeded the eligibility ceiling, VA concluded that it had erroneously overpaid her pension benefits.

Mrs. Hayes sought a waiver of this debt based on her difficult financial circumstances. But VA determined that it could not waive the debt because the appellant acted in bad faith when she did not accurately report income to VA. On appeal to the Board, she stated that she did not intentionally hide income but instead didn't realize that SSA or unemployment benefits were countable. In its first decision, the Board likewise denied a waiver. While the Board thought it was "not clear that the appellant intentionally committed fraud or acted in bad faith," it found it unnecessary to resolve those questions because it was "clear that she continuously misrepresented her income to VA." R. at 52. Mrs. Hayes appealed, and this Court eventually granted a joint motion to remand, expressing that the Board did not make clear findings on material questions of fact and law.

In the decision on appeal, the Board again denied waiver of a $35,970 overpayment of pension benefits, observing that waiver is unavailable if the overpayment resulted from fraud, misrepresentation, or bad faith. Although the Board found insufficient evidence of record to prove fraud, it nonetheless determined that Mrs. Hayes "purposefully reported inaccurate income . . . with the intent of obtaining and retaining VA benefits that she was not entitled to receive, thereby engaging in willful misrepresentation of a material fact." R. at 3. It further determined that she acted in bad faith when she "failed to report all of her income and did so with the intent to seek an unfair advantage, with knowledge of the likely consequences, and with resulting loss to the government." *Id.* As discussed below, these conclusions hinged on findings that the appellant was clearly and repeatedly informed that she should report income of any type, even if she were unsure whether it counted, and that she failed to report income such as wages as well as SSA and unemployment benefits. As to wages, the Board reasoned that there could be no uncertainty about whether wages constituted income. "Had the appellant reported her wage income, but not her other sources of income, the Board would be more persuaded by her reports about her lack of knowledge that Social Security and unemployment compensation were included as 'income.'" R. at 5. This appeal followed.

## II. ANALYSIS

Congress has provided that there "shall be no recovery of payments . . . or overpayments . . . of any benefits under any of the laws administered by the Secretary whenever the Secretary determines that recovery would be against equity and good conscience." 38 U.S.C. § 5302(a). But section 5302(c) prohibits waiver "under this section if, in the Secretary's opinion, there exists in connection with the claim for such waiver an indication of fraud, misrepresentation or bad faith on the part of the person" seeking the waiver.

VA regulations flesh out these provisions. "In any case where there is an indication of fraud or misrepresentation of a material fact on the part of the debtor . . ., action on a request for waiver will be deferred pending appropriate disposition of the matter." 38 C.F.R. § 1.962(b) (2021). "However, the existence of a prima facie case of fraud shall, nevertheless, entitle a claimant to an opportunity to make a rebuttal with countervailing evidence; similarly, the misrepresentation must be more than non-willful or mere inadvertence." *Id.* The term "bad faith" "generally describes unfair or deceptive dealing by one who seeks to gain thereby at another's expense." 38 C.F.R.

3

§ 1.965(b)(2) (2021). "Thus, a debtor's conduct . . . exhibits bad faith if such conduct, although not undertaken with actual fraudulent intent, is undertaken with intent to seek an unfair advantage, with knowledge of the likely consequences, and results in a loss to the government." *Id.*

"Waiver decisions . . . are subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary or capricious manner." *McCullough v. Principi*, 15 Vet.App. 272, 275 (2001). But specific Board determinations that the record contains evidence of fraud, misrepresentation, or bad faith are factual findings and may only be overturned if clearly erroneous. *See Lueras v. Principi*, 18 Vet.App. 435, 439 (2004). In all decisions, the Board is required to support its determinations with a statement of reasons or bases that enables a claimant to understand the precise basis for the finding and that facilitates review by this Court. *Sharp v. Shulkin*, 29 Vet.App. 26, 31 (2017).

A.

Mrs. Hayes first argues that the Board adopted a definition of the term "misrepresentation" that is arbitrary and capricious because it "is inconsistent with the statutory and regulatory provisions, as well as the plain meaning of the term." Appellant's Br. at 7. She also argues that the Board provided inadequate reasons or bases for finding that she made misrepresentations to the Agency and that she acted in bad faith.

Although the argument section of the appellant's brief begins with a suggestion that the standard adopted by the Board is inconsistent with section 5302, it soon after acknowledges that "the statute is silent as to the meaning of 'misrepresentation.'" Appellant's Br. at 13. This acknowledgement is sensible: Neither section 5302 nor any other provision in title 38 of the U.S. Code provides a definition for "misrepresentation."

Turning to the regulations, the appellant likewise states that they are silent on the word's meaning but that's not quite so; although falling short of a comprehensive definition, § 1.962(b) nonetheless provides concrete guidance about the meaning of the term. Specifically, it establishes that the misrepresentation must pertain "to a material fact" and that it must be "more than non-willful or mere inadvertence." 38 C.F.R. § 1.962(b). These are important limiting factors that supply clear guidance for the Board to understand and apply the Agency's standard for "misrepresentation," namely that the alleged misrepresentation not involve unimportant (i.e., non-material) matters or be merely the product of oversight or negligence. Stated differently, the

4

alleged misrepresentation must relate to sufficiently important matters and contain an element of willfulness.

The Board followed § 1.962(b) directly, explaining that "misrepresentation" meant the "willful failure to disclose a material fact" that is "more than non-willful or mere inadvertence." R. at 5-6. For this reason, it's difficult to see how the standard for "misrepresentation" adopted by the Board here could contradict the statute or regulation: section 5302 contains no definition for the term, while § 1.962(b) supplies the exact guidance towards the term that the Board followed.

The appellant's argument has a two-fold structure: *first*, that Congress did not supply a definition for "misrepresentation" in the statute and so the word should be understood to bear its everyday meaning; and *second*, that the standard the Board adopted is inconsistent with that meaning because it "includes an element of intent"—i.e., "willful failure to disclose a material fact . . . more than non-willful or mere inadvertence." Appellant's Br. at 15. "This scienter element is outside of the plain meaning of the term," Mrs. Hayes maintains, since "'misrepresentation' . . . can include intentional and negligent nondisclosure, concealment or false statements." *Id.*

To support this contention, the appellant cites dictionary definitions of "misrepresentation": (1) "an intentionally or sometimes negligently false representation made verbally, by conduct, or sometimes by nondisclosure or concealment and often for the purpose of deceiving, defrauding, or causing another to rely on it detrimentally"; and (2) the "act of making a false or misleading assertion about something, [usually] with the intent to deceive." *Id.* Similarly, she cites the standard for "fraudulent misrepresentation" as requiring that the speaker (3) "know" of the falseness of a representation "or act recklessly without knowledge of the truth." *Id.*[1]

But these definitions make scant headway towards showing that VA's standard departs from the everyday understanding of the term "misrepresentation." Ultimately, it's difficult to object to VA's including such an element in its "misrepresentation" standard, as the whole point of a scienter requirement is that a claimant not be penalized for "otherwise innocent conduct." *Rehaif v. United States*, 139 S.Ct. 2191, 2195 (2019). Across these definitions, the scienter element regarding a representation's truth is presented as a range, so a "misrepresentation" can occur when a false statement is made intentionally or negligently, knowingly or recklessly. This indicates that

---

[1] The other definition Mrs. Hayes cites is part of a broader dictionary entry for "false pretense," Appellant's Br. at 15-16, and hence is not useful here. The Secretary cites *Bouvier's Law Dictionary* for the proposition that "misrepresentation" may occur either intentionally or negligently. Secretary's Br. at 19.

there is no standard understanding of the term "misrepresentation" that objectively embodies only one specific scienter standard about the truth or falsity of a representation. For this reason, the appellant has not shown that VA's adoption of a "willful" standard impermissibly deviates from an everyday definition of "misrepresentation," which in these circumstances we must presume Congress intended to adopt. *See Gumpenberger v. Wilkie*, 973 F.3d 1379, 1382 (Fed. Cir. 2020) ("A court interpreting a statute 'presume[s] that Congress intended to give those words their plain and ordinary meaning'.") (cleaned up).

Ultimately, the Court cannot discern any legal error in the standard VA adopted. In the general hierarchy of mental states, the "descending order of culpability" runs as follows: Purpose (i.e., specific intent), knowledge, recklessness, and negligence. *United States v. Bailey*, 444 U.S. 394, 404 (1980). Willfulness occupies a place near the top of this hierarchy. "In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." *Id.* The Federal Circuit has reasoned, in a different context but as a general matter, that the term "willful" employs a higher state of culpability than the word "intentional," one that requires that an actor have actual knowledge that her conduct violates the law. *See Vestal v. Dep't of Treasury*, 1 F.4th 1049, 1055–56 (Fed. Cir. 2021) (citing *Jerman v. Carlisle*, 559 U.S. 573, 582-85 (2010)). Elsewhere in veterans law, VA defines "willful" in the context of "willful misconduct," which is "an act involving conscious wrongdoing or known prohibited action" that "involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." 38 C.F.R. § 3.1(n) (2021); *see Martin v. McDonald*, 761 F.3d 1366, 1369-70 (Fed. Cir. 2014). And, as discussed below, the Board found that Mrs. Hayes acted with this level of culpability; however, it makes little sense to challenge VA for arriving at this decision to deny waiver based on a *more claimant-protective* standard than a presumably less restrictive standard that would construe any inaccurate statement as a misrepresentation even if it was resulted from inadvertence or a simple mistake.

Here, the Board determined that Mrs. Hayes committed misrepresentation because she made a conscious choice not to disclose—either on her initial VA pension application or in subsequent updates—any income, despite knowing from clear statements from the Agency that

6

the law required her to do so. *See* R. at 4 ("The fact that the appellant was directly told on the [VA form] to report to VA all payments from any source and asked about her reliance on public assistance, but chose to not disclose this information, demonstrates a willful misrepresentation of a material fact."). Mrs. Hayes doesn't directly challenge the Board's conclusion as improper or inconsistent with the record. Instead, based on her assertion that the Board applied an improper or vague standard for "misrepresentation," she contends that the Board's reasons or bases were inadequate to support its conclusion. Having rejected that premise, the Court discerns no defect in the Board's explanation, as both Mrs. Hayes and this Court can understand the rationale for the ruling. Unable to identify any error in the Board's decision to deny waiver based on the misrepresentation of income, the Court affirms.

B.

The appellant's final argument is that the Board inadequately explained its conclusion that she also acted in "bad faith."[2] Recall that this term "generally describes unfair or deceptive dealing by one who seeks to gain thereby at another's expense," meaning that a debtor acts in bad faith when her conduct, "although not undertaken with actual fraudulent intent, is undertaken with intent to seek an unfair advantage, with knowledge of the likely consequences, and results in a loss to the government." 38 C.F.R. § 1.965(b)(2). Mrs. Hayes admits that the Board's discussion addresses each of the elements of "bad faith" but still contends that its analysis "fails to take into account that there is no evidence that [she] had an intent to seek an unfair advantage." Appellant's Br. at 21.

In truth, this contention sounds more like a challenge to the Board's factual determination that she acted in bad faith—a determination that we review for clear error. *Lueras*, 18 Vet.App. at 439. For example, the appellant contends that she didn't intend to seek an unfair advantage because "she has reported her income and assets to the VA" ever "[s]ince she was notified of the overpayment in December 2013." Appellant's Br. at 21. She also points to her statements to the Agency that her failure to report income was based on a mistake, not an intention to seek an unfair advantage. But the Court will confine its review to the argument that Mrs. Hayes says she's actually making—that she never acted in bad faith.

---

[2] Given that the appellant's misrepresentation is an independent reason to deny waiver, the Court need not address whether the Board committed error in its "bad faith" analysis to determine that affirmance is appropriate. For the sake of completeness, however, the Court will resolve that argument as well.

This Court has previously held that "it is the Secretary's burden to prove bad faith, and it is the Board's responsibility to clearly articulate its reasons or bases for finding that it exists." *Reyes v. Nicholson*, 21 Vet.App. 370, 377 (2007). In doing so, "the Board should consider any evidence and relevant factors bearing on the claimant's knowledge of the need to report and . . . awareness of income subject to reporting." *Id.*

The Board adequately explained why it determined that Mrs. Hayes intended to seek an unfair advantage against the government by not reporting her income. It noted that she was informed no fewer than five times between 2009 and 2013 "that it was her responsibility to report to VA all her income, including Social Security benefits, wages, payments from anyone, etc." R. at 7. The assertion that she didn't think reportable income included unemployment compensation and SSA benefits was flatly contradicted, the Board found, because all of VA's correspondence regarding initial and continued eligibility for pension "directly address[ed] Social Security payments or 'pension or other payments from anyone.'" *Id.* "Most tellingly, unemployment benefits and Social Security benefits were not the only income she failed to report; the appellant also failed to report wages during this time. This action," the Board reasoned, "illustrate[d] that she intended to not report all her income, regardless of its source or whether she earned the income." *Id.* "Had the appellant reported her wage income, but not her other sources of income," the Board continued, it would have been "more persuaded by her reports about her lack of knowledge that Social Security and unemployment compensation were included as 'income.'" *Id.* The failure to report wages as reportable income, however, convinced the Board that she consciously decided not to do so with the intent to seek an unfair advantage—i.e., she intended "not [to] report income that would disqualify or reduce her VA [pension] benefits." *Id.* Although acknowledging it had said in an earlier vacated decision that it was "not clear" Mrs. Hayes had acted in bad faith, the Board explained that "further review and consideration of the evidence, including the failure to report not just unearned income, but earned income as well, supports a finding of bad faith on the part of the appellant." R. at 8.

Although the appellant did not expressly challenge the Board's legal or factual conclusions on this issue, the Board still provided sufficient explanation for its findings to permit effective review by the Court and to satisfy the "reasons or bases" requirement spelled out in 38 U.S.C. § 7104(d).

## III. CONCLUSION

Based on the foregoing, the Court AFFIRMS the October 28, 2019, Board decision.